_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

OCT 2 3 2020

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 202-749-1051, WITH ELECTRONIC SERIAL NUMBER C6KTG542HG6X, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE** | Case No.   GLS-20-2334 <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Lindsay M. Keeler, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 202-749-1051, Electronic Serial Number C6KTG542HG6X ("the SUBJECT PHONE"), that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since July 2019.  Your affiant is currently assigned to the FBI Cross Border Task Force, Cheverly, Maryland domicile, comprised of FBI Special Agents, Intelligence Analysts, and Detectives from Prince George's County Police Department ("PGPD").   Your affiant has

participated in several investigations focused on violent crimes, to include, commercial armed robberies, homicides and kidnappings. In my capacity as a Special Agent of the FBI, I am authorized to obtain and serve federal search warrants. I have also participated in the execution of search warrants involving search and seizures of mobile phones and have gained experience in the area of cellular analysis.

3.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.       Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951 and 924(c) have been committed by Shaykh **ABDUL-MAJID** (**"ABDUL-MAJID"**). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## **PROBABLE CAUSE**

5.       On June 29, 2020 at approximately 4:43 pm, officers with PGPD responded to a report of a commercial armed robbery at Phone City, located in District Heights, Maryland. The victims advised the Subject entered the store and pointed a silver and black handgun at them. The Subject demanded money from the registers and phones from the store's display case from Victim 1 and Victim 2, who were both employees of Phone City. Victim 1 and Victim 2 complied with the demands, giving the subject approximately $500 in store funds and ten cellular phones with a total approximate value of $7,400. The Subject then demanded a wallet from Victim 3, a Phone City customer. Victim 3 complied and gave the subject his wallet containing personal documents to include, bank cards, credit cards, a driver's license, a social

2

security card and approximately $50. The wallet was gray in color and had the Washington Nationals logo on the front.

6.        The Subject was a black male, approximately 30-35 years old with a light complexion, long black dreadlocks and thin build. He was wearing an orange sweatshirt with a black stripe and "Kappa" clothing logo down the sleeves, dark blue jeans, black surgical mask, clear plastic gloves, olive-colored ball cap with black bill, and black Nike sneakers. Minutes prior to the robbery, video surveillance shows the Subject walking towards Phone City from the direction of Addison Avenue. A witness, who resides on Addison Avenue, described seeing an individual, who matched the Subject's description, park in front of his house in a champagne-colored sport utility vehicle and exit on foot. The witness saw the same individual run from the direction of Phone City and get back into the vehicle a short time later. During the course of the investigation the vehicle was identified as a 2001-2004 champagne-colored Mitsubishi Montero Sport with a unique round window decal on the rear driver side window.  The following is a photograph of the vehicle, which was seized on July 7, 2020, as described further below:



7.      On July 4, 2020 at approximately 6:47 pm, PGPD officers responded to a report of a commercial armed robbery at Warehouse Liquors, located in District Heights, Maryland. Victim 4 and Victim 5, both employees at Warehouse Liquors, advised the Subject entered the store by jumping through the drive-thru window and pointed a silver and black handgun at them. The Subject demanded money from the store's register and the victims complied, giving him approximately $2,000.

8.      The Subject was a black male, approximately 20-35 years old with a light complexion, long black dreadlocks and a thin build. He was wearing an orange sweatshirt with a black stripe and "Kappa" clothing logo down the sleeves, red sweatpants with the "Kappa" clothing logo down the sides, black-colored ball cap with "SLANE" stitched above the bill in white, black surgical mask, orange/red work gloves, white socks, and black sandals. The Subject fled on foot from the store towards Camp Street.

9.      Approximately four minutes prior to the robbery, video surveillance showed a champagne-colored 2001-2004 Mitsubishi Montero Sport with a unique round window decal on the rear driver side window drive onto Camp Street. The Subject approached Warehouse Liquors from Camp Street and fled back towards Camp Street following the robbery.

10.     On July 5, 2020 at approximately 10:11 am, PGPD officers responded to a report of a commercial armed robbery and non-contact shooting at Batteries Plus Bulbs, located in Kettering, Maryland. Officers met with Victim 6, an employee of Batteries Plus Bulbs, who was transported to Bowie Heath Center for lacerations to his left hand and fingers. Interviews and surveillance footage revealed that the Subject enter the store posing as a customer. The Subject then produced a silver and black handgun, pointed it at Victim 6, and demanded funds from the store. Victim 6 complied and gave the Subject $200 in store funds. The Subject then demanded

4

Victim 6 move to the store's back storage area and Victim 6 complied. Victim 6, fearing he would be shot, attempted to remove the handgun from the Subject. The Subject fired two rounds during the struggle, neither striking Victim 6.  The Victim's hand and fingers were cut as he tried to prevent the handgun's slide from racking as casings were ejecting. After the struggle, the Subject fled on foot out the back of Batteries Plus Bulbs with the store funds.

11.     The Subject was a black male, approximately 20-35 years old with a light complexion, long black dreadlocks and thin build. He was wearing an orange sweatshirt with a black stripe and "Kappa" clothing logo down the sleeves, red sweatpants with the "Kappa" clothing logo down the sides, black-colored ball cap with "SLANE" stitched above the bill in white, light-colored surgical mask, orange/red work gloves, white socks, and black sandals with a white circular design.

12.     Further investigation revealed that on June 3, 2020, a Mitsubishi Montero Sport bearing Washington, DC registration plate ENV2337 was involved in a police incident at 2409 Franklin Street NE, Washington, DC. Historical license plate reader ("LPR") photographs were reviewed for Washington, DC registration plate ENV2337. The photographs revealed the vehicle's make, model, color and circular decal displayed on the rear driver's side window were consistent with the Subject's vehicle seen in the vicinity of the commercial armed robberies at Phone City and Warehouse Liquors.

13.     On July 7, 2020, detectives located the Mitsubishi Montero Sport bearing Washington, DC registration plate ENV2337 parked in Washington, DC. The vehicle was occupied by **ABDUL-MAJID**. Upon seeing law enforcement, **ABDUL-MAJID** fled from the vehicle on foot, but was apprehended a short time later**. ABDUL-MAJID's** race, sex, age,

complexion and hair style are all consistent to descriptions and images captured of the Subject in the Phone City, Warehouse Liquors and Batteries Plus Bulbs robberies.

14.     The Mitsubishi Montero Sport bearing Washington, DC registration plate ENV2337 was seized and transported to Prince George's County, Maryland.  A search warrant authorized by the Honorable ShaRon M. Grayson Kelsey, Associate Judge, Circuit Court for Prince George's County, Maryland, was later executed on the vehicle. During the search of the vehicle a black-colored ball cap with "SLANE" stitched above the bill in white and a red glove, both consistent with the items worn by the Subject in the Warehouse Liquors and Batteries Plus Bulbs robberies, were recovered. A gray wallet with the Washington Nationals logo on it, consistent with the wallet taken from Victim 3 during the Phone City robbery, was recovered. A silver and black handgun, consistent with the weapon used by the Subject in the Phone City, Warehouse Liquors and Batteries Plus Bulbs robberies, was also recovered. **The SUBJECT PHONE**, along with three other mobile phones were recovered from inside the Mitsubishi Montero Sport bearing Washington, DC registration plate ENV2337.

15.     A search warrant (Case No. 20-mj-1997-TJS) authorized by the Honorable Timothy J. Sullivan, United States Magistrate Judge, was obtained for the **SUBJECT PHONE** recovered from inside the Mitsubishi Montero Sport, along with four other mobile devices. The search revealed, among other things, that the **SUBJECT PHONE** was assigned telephone number 202-749-1051. The GrayKey[1] Progress Report conduced on the **SUBJECT PHONE** listed the owner's name as "Shaykh Abdul-Majid." The **SUBJECT PHONE** also contained Instagram messages between account, one_up_top_ockee, and various individuals. Analysis of

---

[1] GrayKey is a device utilized by law enforcement to conduct extractions on Apple iOS devices

the **SUBJECT PHONE** listed the owner of the Instagram account, one_up_top_ockee, as "Shaykh Ahmad Abdul-Majid". Numerous images and videos of **ABDUL-MAJID** were also found on the **SUBJECT PHONE**.

16.     Analysis of the **SUBJECT PHONE** further revealed that, on June 11, 2020, a search was conducted via Safari on the **SUBJECT PHONE** for the address of the Phone City store that was the target of the commercial armed robbery—which included the theft of iPhones—on June 29, 2020. On June 29, 2020, the same day as the Phone City commercial armed robbery, a search was conducted via Google on the **SUBJECT PHONE** for "how to switch iphones". On the following day, June 30, 2020, a video was accessed on the **SUBJECT PHONE** that showed eight mobile phones with the text "IPhone 6's And 7's Onna Market". On July 2, 2020—two days prior to the commercial armed robbery at Warehouse Liquors—a search was conducted via Google for "liquor store open near me."

17.     Analysis of the **SUBJECT PHONE** also showed that on May 29, 2020, a search was conducted via Google for "7-11 on auth rd robbed" and "7-eleven robbery maryland". Further investigation revealed that on May 28, 2020 at approximately 7:21 a.m., PGPD officers responded to a report of a commercial armed robbery at a 7-Eleven located in Camp Springs, Maryland. The Subject pointed a black handgun at a store employee and demanded money. The employee complied, opened the register and gave the Subject approximately $200. The Subject was a black male, approximately 5'10"- 6'0" with a light complexion. Surveillance images from inside the 7-Eleven show that the subject's race, sex and complexion are consistent with that of **ABDUL-MAJID**.

18.     In sum, I believe that there is probable cause to issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41 because I believe

that the information to be searched will contain evidence of the May 28, 2020, June 29, 2020, July 4, 2020, and July 5, 2020 commercial armed robberies described above. Specifically, I believe that the cell site locations of the **SUBJECT PHONE** on the days of the robberies, as well as on the days immediately proceeding and following the robberies, will be evidence of **ABDUL-MAJID** planning and/or participating in the robberies.

19.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

20.     Based on my training and experience, I know that T-Mobile can collect cell-site data about the **SUBJECT PHONE**.  I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

8

21.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONE's** user or users and may assist in the identification of co-conspirators and/or victims.

**(Continued)**

## AUTHORIZATION REQUEST

22.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.  I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*Lindsay M. Keeler*

Lindsay M. Keeler, Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 18th  day of September, 2020.

Honorable Gina L. Simms
United States Magistrate Judge

10

**ATTACHMENT A**
**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number 202-749-1051, with Electronic Serial Number C6KTG542HG6X, ("the Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

**ATTACHMENT B**
**Particular Things to be Seized**

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period May 26, 2020 through July 9, 2020.

    a.  The following information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

2

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        ii.  information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1951 and 924(c) involving Shaykh **ABDUL-MAJID** during the period May 26, 2020 through July 9, 2020.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS**
**PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct.  I am employed by T-Mobile and my title is

_____.  I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved.  I state

that the records attached hereto are true duplicates of the original records in the custody of T-

Mobile.  The attached records consist of _____ **[GENERALLY DESCRIBE**

**RECORDS (pages/CDs/megabytes)]**.  I further state that:

     a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly conducted

business activity of T-Mobile, and they were made by T-Mobile as a regular practice; and

     b.     such records were generated by T-Mobile's electronic process or system that

produces an accurate result, to wit:

          1.     the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of T-Mobile in a manner to ensure that they are true duplicates of the

original records; and

          2.     the process or system is regularly verified by T-Mobile and at all times

pertinent to the records certified here the process and system functioned properly and normally.

4

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature